IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SHANNON SCHWEYEN | CV 21–138–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| UNIVERSITY OF MONTANA-MISSOULA, | |
| Defendant. | |

Before the Court are three motions: (1) the University's Motion to Compel Arbitration and Dismiss Complaint or Stay Proceedings; (2) Schweyen's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Compel Arbitration, or Alternatively, to Strike Exhibits; and (3) Schweyen's Motion for Leave to Conduct Limited Jurisdictional Discovery and to Stay Defendant's Motion to Dismiss. (Docs. 13; 26; 28.) For the reasons stated herein, the Court will deny all three motions.

## BACKGROUND

In July 2016, Robin Selvig, the University's head women's basketball coach for 38 years, announced his retirement. (*See* Doc. 22-2 at 3.) About a month later, the University hired Schweyen, a longtime assistant coach, to be the new head women's basketball coach. (*Id.* at 3.) To this end, the parties executed an

1

employment agreement making her head coach from September 1, 2016 to June 30, 2019.  (Doc. 15-1.)

Relevant to this Order, the employment agreement outlined a dispute resolution process, stating:

12.     DISPUTE RESOLUTION

a.      If any dispute arises under this Agreement, the parties agree to attempt to resolve the dispute in good faith as follows:

1.      First, by informal negotiation.

2.      If informal negotiations fail to resolve the dispute, the parties agree to seek mediation using a mediator acceptable to both parties.

3.      If mediation fails to resolve the dispute within 30 days of initial mediation session, the parties agree to submit to binding arbitration under the provisions of the Montana Uniform Arbitration Act, Title 27, Chapter 5, MCA.

(*Id.* at 13.)  Schweyen admits she read this language, but states the University never explained it to her, and she did not understand what it meant, or the effect it would have on a future sexual discrimination claim.  (Doc. 22-2 at 5.)

Schweyen also asserts that she had never negotiated an employment agreement before and did not feel comfortable negotiating with the University to

get "more favorable terms in the agreement." (*Id.* at 4.)  Schweyen did not consult

with an attorney before signing the agreement and alleges that when she told the

University's Athletic Director this he stated "Good. I'm not going to give you

more money anyway." (*Id.*)  Schweyen served as the University's head women's

basketball coach through the expiration of her employment agreement in June

2019.  The University and Schweyen then executed a second employment

agreement keeping her on as head coach until June 2020.  (Doc. 15-2.)  This

second employment agreement contained an identical version of the dispute

resolution clause enumerated above.  (*Id.* at 13.)

Once Schweyen's second employment agreement expired, it was not

renewed.  Schweyen filed suit against the University on November 11, 2021,

complaining of sex discrimination in violation of Title VII of the Civil Rights Act

of 1964.  (Doc. 1. at 21–23.)  Her lawsuit has three theories, arguing the University

engaged in sex discrimination by: (1) more harshly evaluating her performance as

compared to the performance of her male counterparts; (2) targeting her for

criticism because of her sex; and (3) not renewing her contract because of her sex.

(*Id.*)

In response, the University moved to compel arbitration based on the dispute

resolution clauses in the two employment agreements.  (Doc. 13.)  Schweyen

argues the arbitration clauses are unenforceable for a variety of reasons.  (Doc. 22.)

Schweyen has also filed separate motions seeking leave to file a surreply brief in opposition to the University's motion to compel (Doc. 26) and for jurisdictional discovery regarding the University's contracts with the Department of Defense (Doc. 28). Below, the Court concludes Schweyen did not knowingly agree to arbitrate her Title VII claims and will therefore deny the University's motion to compel. Because of this, it denies both of Schweyen's motions as moot.

## ANALYSIS

The University couches its motion to compel arbitration under Rule 12(b)(1), (Doc. 13 at 2), which authorizes a motion to dismiss for lack of subject matter jurisdiction. Federal courts disagree on whether this a "procedurally sufficient mechanism to enforce an arbitration provision," compare *ASUS Computer Intern. v. InterDigital, Inc.*, 2015 WL 5186462, *2 (N.D. Cal. 2015) to *Hernandez v. Pei Wei Asian Diner LLC*, 2017 WL 6888260, *2 (C.D. Cal. 2017), but because the parties have not raised this issue, the Court declines to address it. *See Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (rejecting a "hypertechnical reading of" motion to compel arbitration).

The reality is, however, that the University's ability to enforce a contractual arbitration agreement in federal court stems not from the Federal Rules of Civil Procedure, but the Federal Arbitration Act ("FAA"). *Mortensen v. Bresnan*

4

*Communs., LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013) (citing 9 U.S.C. § 2).

Congress passed the FAA "to counter the prevalent judicial refusal to enforce

arbitration agreements" and it embodies "a liberal federal policy favoring

arbitration." *Id.*

The FAA's "primary substantive provision," *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011), provides:

> A written provision in . . . a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy thereafter
> arising out of such contract . . . shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for
> the revocation of any contract.

9 U.S.C. § 2.  To avail itself of this provision, the University must demonstrate

that: (1) there is "a valid, written agreement to arbitrate;" and (2) "the agreement to

arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt.,*

*Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

As an initial matter, nobody disputes the employment agreements entered

into between the University and Schweyen have dispute resolution clauses

outlining a grievance process that ultimately culminates in arbitration.  Instead,

Schweyen argues these arbitration provisions are unenforceable because: (1) the

Franken Amendment bars the University from requiring mandatory arbitration of

her Title VII claim; (2) the University cannot demonstrate she knowingly or

voluntarily waived her rights under Montana law in agreeing to the arbitration

5

clauses; and (3) the University cannot demonstrate a knowing and explicit waiver of Schweyen's rights under federal law to bring her Title VII claims in federal court. (Doc. 22 at 5–16.)  The Court addresses each contention in turn.

### A.    The Franken Amendment.

The so-called Franken Amendment was included in Congress's 2010 Defense Appropriations Act and provides, in relevant part:

> SEC. 8116. (a) None of the funds appropriated or otherwise made available by this Act may be expended for any Federal contract for an amount in excess of $1,000,000 that is awarded more than 60 days after the effective date of this Act, unless the contractor agrees not to:
>
> (1) enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 . . .; or
>
> (2) take any action to enforce any provision of an existing agreement with an employee or independent contractor that mandates that the employee or independent contractor resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 . . . .

Department of Defense Appropriations Act, 2010, Pub. L. 111-118, § 8116, 123 Stat. 3409, 3454–55 (2009); *see also Harris v. Halliburton Co.*, 2016 WL 4204604, *2–3 (E.D. Cal. 2016).  This provision has remained in subsequent defense appropriations, *see, e.g.,* Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. 115-245, § 8094, 132 Stat. 2981, 3022 (2018),

and is a codified federal regulation, 48 C.F.R. §§ 222.7402(a), 222.7405, 252.222-7006.

In Schweyen's view, the Franken Amendment forbids the University from compelling arbitration of her Title VII claim, because it has "been a federal contractor subject to the appropriations act restrictions since at least May 2019." (Doc. 22 at 7.)  To support this assertion, Schweyen points to: (1) a May 2019 cooperative agreement between the University and DOD (*see* Doc. 25-2 at 5–78); (2) a September 2019 contract between the University and DOD (*see id.* at 79–107); and (3) a series of DOD contracts entered into between the University and DOD in 2020 (*see* Doc. 22-1 at 1–6).  (Doc. 22 at 6–7.)

The University responds with several arguments.  First, it contends that even if the Franken Amendment applies to the Schweyen's claim against the University, this provision of law does not invalidate the dispute resolution provisions of her employment agreement or otherwise relieve her from her contractual duty to arbitrate.  (Doc. 25 at 3–6.)  Second, the University argues the Franken Amendment is inapplicable because none of its DOD contracts fall within its scope or otherwise incorporate Franken Amendment's prohibition on the inclusion or enforcement of Title VII arbitration claims.  (*Id.* at 6–9.)  Finally, the University argues the Franken Amendment is inapplicable because the arbitration clause at issue was not a condition of Schwyen's employment, but rather a negotiated term

in her employment agreement.  (*Id.* at 9–14.)  The Court agrees with the University.

The University's first argument—that the Franken Amendment does not afford Schewyen a remedy or avenue for avoiding the arbitration clause in her employment agreements—is supported by the Amendment's text and implementing regulations.  The Franken Amendment forbids executive disbursement of appropriated funds for defense contracts "in excess of $1,000,000" unless the contractor agrees not to compel an employee to arbitrate a Title VII employment discrimination claim.  In other words, it is a restraint on the executive's ability to disburse appropriations through defense contracts.

This understanding is confirmed by the Franken Amendment's implementing regulations, which limit themselves to dictating the inclusion of certain contractual language in DOD contracts exceeding $1,000,000.  48 C.F.R. §§ 222.7402(a), 222.7405, 252.222-7006.  A contractor's refusal to honor this contractual language, when it has been included in a defense appropriation contract, may very well amount to a breach for contract law purposes, but neither the Franken Amendment itself, or the implementing regulations cited herein, provide Schweyen with enforcement rights when the University flouts such contractual obligations.  The few courts that have passed on the question uniformly agree.  *Harris*, 2016 WL 4204604 at *3 n.2; *Abbiati v. Lockheed Martin Info.*

8

*Tech.*, 2 N.E.3d 199 (Mass. App. Ct. 2014); *Phifer v. Michigan Sporting Goods Distubs., Inc.*, 2010 WL 3609376, *7 (W.D. Mich. 2010).

The only contrary authority appears to be the Fourth Circuit's decision in *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 683 (4th Cir. 2020) (describing the Franken Amendment as a "legal prohibition" that "bars defense contractors from mandating arbitration of Title VII employment claims"). This opinion is non-binding on the Court and conflicts with the Franken Amendment's plain text, which limits its reach to the actions of the executive in brokering defense appropriation contracts. As stated above, nothing in the Franken Amendment or its implementing regulations imposes freestanding legal obligations on covered contractors, beyond requiring certain agreements related to the arbitrability of employment discrimination claims under Title VII. In sum, even assuming the Franken Amendment applies to the University, it does not provide Schweyen with any substantive defense to the University's attempt to arbitrate her claim in this case.

Having reached this conclusion, the Court elects not to address whether any of the University's contracts fall within the Franken Amendment's scope or whether the arbitration clauses at issue were a condition of Schweyen's employment.

## B.     Knowing and Voluntary Waiver Under Montana Law.

Schweyen's argument that the arbitration clauses in her employment contracts cannot be enforced because she did not knowingly or voluntarily waive her rights under Montana law (Doc. 22 at 9–14) is specifically foreclosed by binding Ninth Circuit precedent.  As noted above, because this is a federal question case (*see* Doc. 1 at 3), federal substantive law, namely the FAA, governs the question of whether this lawsuit is arbitrable.  *Mortensen*, 722 F.3d at 1158.  Because of this "the FAA" generally "preempts contrary state law," such as the rule invoked by Schweyen in this case.  *Id.*

Without question, under Montana law, because "arbitration agreements constitute a waiver of a party's fundamental constitutional rights to trial by jury and access to courts," they are only valid where the agreement is "'voluntarily, knowingly, and intelligently' made."  *Id.* at 1160.  But because this rule "runs contrary to the FAA" it is preempted and becomes inapplicable.  *Id.* at 1161.  In other words, because this Court must apply the FAA to the University's motion to compel arbitration, Montana's "fundamental rights rule" cannot be used to defeat the University's motion.  *Id.*  All that remains is Schweyen's argument that, under federal law, she did not knowingly waive her right to advance a Title VII employment discrimination claim in this federal forum.

10

### C.   Knowing and Explicit Waiver Under Federal Law.

Schweyen's argument on this issue raises more difficult questions. Essentially, Schweyen argues that the arbitration clauses in her employment agreements did not sufficiently inform her that she was forfeiting her right to bring Title VII employment discrimination claims in a judicial forum, such that there was a knowing waiver as required by Ninth Circuit precedent.  (Doc. 22 at 14–16.) The University responds with divergent interpretations of the relevant cases.  (Doc. 25 at 10–14.)  Because the party's arguments are so case intensive, a survey of the relevant caselaw is in order.

In the FAA context, civil rights claims are different.  Just 10 years after Title VII of the Civil Rights Act was passed, the Supreme Court held that an arbitration clause in a collective bargaining agreement could not prevent an employee from bringing a Title VII claim in federal court.  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59–60 (1974).  For awhile, federal courts, including the Ninth Circuit, read *Alexander* as "prohibiting any form of compulsory arbitration of Title VII claims."  *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994) (citing *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1431 (9th Cir. 1994)). But in 1991, the Supreme Court decided *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).  There, the Supreme Court held civil rights claims, in that case a claim brought under the ADEA, are arbitrable under the FAA.  *Id.* at 35.

11

In the wake of *Alexander*—which had been read to bar mandatory arbitration of Title VII claims—and *Gilmer*—which recognized that at least some civil rights claims may be subject to mandatory arbitration—the Ninth Circuit decided *Lai*.  In *Lai*, two employees of an insurance company signed a form in which they agreed to "arbitrate any dispute, claim or controversy that" fell within the scope of a separate arbitration agreement they never received.  *Id.* at 1301.  This separate arbitration agreement required arbitration of "any dispute, claim or controversy that may arise between [them and the] firm, or a customer, or any other person." *Id.* at 1302.  The two employees eventually sued Prudential alleging sex discrimination in violation of several state statutes.  *Id.* at 1301.

Prudential sought to compel arbitration under the FAA and prevailed in the district court.  *Id.*  The Ninth Circuit reversed, holding that there must be "a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes."  *Id.* at 1304.  In other words, "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration."  *Id.* at 1305.  Applying that standard to the facts, the Ninth Circuit concluded that because the forms they signed "did not purport to describe the types of disputes that were to be subject to arbitration" and "did not

even refer to employment disputes," they could not have knowingly agreed to arbitrate their Title VII claims.  *Id.*

The Ninth Circuit expanded on *Lai* in the subsequent case of *Renteria v. Prudential Ins. Co. of Am.*, 113 F.3d 1104 (9th Cir. 1997).  In *Renteria*, before joining Prudential an employee signed a form requiring arbitration of:

> any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

*Id.* at 1105.  During Renteria's employment, Item 10 was amended to specifically require arbitration of any claim "arising out of the employment or termination of employment," but at the time she signed the form there was no specific mention of employment disputes.  *Id.*  Renteria eventually filed a Title VII sexual harassment suit against Prudential and it was removed to federal court.  *Id.*  Prudential moved to compel arbitration, but the district court denied the motion "finding the case 'on all fours' with" *Lai*.  *Id.*

On appeal, the Ninth Circuit affirmed, reading *Lai* as requiring employees "to expressly agree to waive Title VII's statutory remedies knowing that they are doing so," before an arbitration clause can extend to such claims.  *Id.* at 1107–08 (adding that in *Lai*, "[w]e held that a knowing waiver does not occur where neither the arbitration clauses nor any other written employment agreement expressly put

the plaintiffs 'on notice that they were bound to arbitrate Title VII claims'"). *Lai*, in the Ninth Circuit's view, was indistinguishable from the facts of *Renteria*, because in both cases the form at issue did not specifically mention that employment disputes were arbitrable. *Id.* at 1107.

Next came *Nelson v. Cyprus Bagdad Copper Corporation*, 119 F.3d 756 (9th Cir. 1997). When Nelson became an employee with Cyprus he received an employee handbook and acknowledged he had read and understood it. *Id.* at 758. The handbook outlined some procedures "for resolving employment disputes," including a "Complaint Resolution Policy" mandating a "more formal grievance process culminating in arbitration." *Id.* The handbook also specifically stated that these complaint resolution provisions:

> are the sole and exclusive procedures for the processing and resolution of any problem, controversy, complaint, misunderstanding or dispute that may arise concerning any aspect of your employment or termination of employment including any dispute arising out of or based upon any state or federal statute or law applicable to your employment . . . .

*Id.* Nelson was fired and brought an employment discrimination lawsuit in federal court. *Id.* The district court granted Cyprus' motion to compel arbitration. *Id.*

Nelson appealed and the Ninth Circuit reversed after applying *Lai*. *Id.* at 761. In summarizing its holding, *Nelson* helpfully articulates the rule that federal courts should apply from the *Lai* line of cases, namely:

> Any bargain to waive the right to a judicial forum for civil rights

claims, including those covered by the ADA, in exchange for
employment or continued employment must at the least be express:
*the choice must be explicitly presented to the employee and the
employee must explicitly agree to waive the specific right in question*.
That did not occur in the case before us.

*Id.* at 762 (emphasis added).  Because "nothing in the acknowledgment form

notified him that by agreeing to 'read and understand' he was additionally agreeing

to waive any rights or remedies afforded him by civil rights statutes," the Ninth

Circuit declined to find he had knowingly agreed to arbitrate his claims.  *Id.* at 762.

*Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153 (9th Cir. 1998) continued the

Ninth Circuit's trend of declining to find an employee had knowingly agreed to

arbitrate employment discrimination claims.  When Kummetz began working for

Tech Mold, he received an information booklet and then subsequently signed an

acknowledgement form indicating he had read it and would "abide by [its]

contents."  *Id.* at 1154.  The acknowledgement did not mention the information

booklet's arbitration provision which stated:

The Company and the employee shall submit to arbitration, as
provided in the Dispute Resolution Policy, any alleged unlawful
employment discrimination, termination or employment tort or benefit
claim during or following employment. The parties waive all rights to
a trial, with or without a jury, for resolution of any dispute covered by
this policy.

*Id.*  The information booklet stated the Dispute Resolution Policy could be

obtained by the employee from Tech Mold's accounting office, but Kummetz

never did so.  *Id.*  This policy "identified the types of disputes that were subject to

arbitration, including those of discriminatory termination and constructive termination." *Id.*

Kummetz eventually brought an employment discrimination suit against Tech Mold in federal court, but the district court found he "had waived his right to sue by agreeing to arbitrate any employment-related disputes." *Id.*  Kummetz appealed, and the Ninth Circuit reversed, holding that he "did not knowingly enter an arbitration agreement." *Id.*  The Ninth Circuit found the case "remarkably similar to" *Nelson* in that the acknowledgment form failed to mention the arbitration clause or "imply anything about employment-related disputes, civil rights statutes, or waivers of remedies." *Id.* at 1155.  Because of that, the arbitration agreement was "not enforceable because it was neither explicitly presented nor explicitly accepted." *Id.* at 1155–56 (adding "Only if Tech Mold had specifically called Kummetz's attention to the arbitration clause in the Booklet would the clause suffice in the face of the uninformative Acknowledgement.")

From *Lai* to *Kummetz* employment discrimination plaintiffs in the Ninth Circuit were largely successful in arguing they had not knowingly agreed to arbitrate their claims.  More recent cases have gone in the opposite direction. *Ashbey v. Archstone Property Management, Inc.*, 785 F.3d 1320 (9th Cir. 2015) is a good example.  During Ashbey's career at Archstone he signed an acknowledgment form indicating he had "received directions as to how I may

access the Archstone Company Policy Manual, including the Dispute Resolution

Policy" and understood he had "to adhere to all of the policies contained herein."

*Id.* at 1322.

> The Dispute Resolution Policy provided:
>
> This Policy is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.... Except as it otherwise provides, this Policy is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Policy requires all such disputes between Employee and the Company to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.... *This Policy also applies, without limitation, to disputes arising out of the employment relationship or the termination thereof including, without limitation, disputes over ... harassment and claims arising under the ... Civil Rights Act of 1964 ...* and all other state statutory and common law claims.

*Id.* (emphasis added).  Ashbey later sued Archstone advancing claims for unlawful

retaliation under Title VII and state law.  *Id.*  After removing the suit to federal

court, the district court denied Archstone's motion to compel arbitration

concluding he "did not knowingly waive his Title VII right to a jury trial."  *Id.* at

1323.

The Ninth Circuit reversed, stating "[i]n contrast to the acknowledgments in

*Kummetz* and *Nelson*, the Acknowledgment here explicitly notified Ashbey the

Manual contained a Dispute Resolution Policy" and "Ashbey expressly agreed 'to

adhere' to the Manual and the Dispute Resolution Policy."  *Id.* at 1325.  Because

the dispute resolution policy "was at Ashbey's fingerprints" and anyone who

reviewed it "would immediately realize he was 'entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute,'" the Ninth Circuit concluded Ashbey had been presented with an express choice and knowingly agreed to arbitrate his claims. *Id.* at 1325–26.

Just over a year ago, the Ninth Circuit reached a similar result in *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198 (9th Cir. 2021). When Zoller started working for GCA she signed an agreement "provid[ing] that all disputes arising from her employment would be resolved through binding arbitration." *Id.* at 1199–1200. She signed another document "commit[ing] to 'final and binding arbitration' of any controversy or claim relating to or arising out of her employment with the Company, [or] the termination of her employment." *Id.* at 1200 (internal alterations omitted). Zoller also signed a form where she agreed to arbitrate any dispute between her and GCA that must be arbitrated according to the rules of FINRA. *Id.* Zoller was provided with a FINRA rules disclosure that specified employment discrimination claims "*may* be arbitrated at FINRA *only if the parties have agreed to arbitrate it*, either before or after the dispute arose." *Id.* (emphasis original). Zoller was fired and sued GCA in federal court complaining her termination violated various federal civil rights statutes. *Id.* The district court refused to compel arbitration, finding Zoller had not knowingly waived her right to advance her claims in court.

18

On appeal, the Ninth Circuit reversed.  *Zoller* views the entire *Lai* line of cases with skepticism, doubting whether "the knowing wavier requirement remains good law," but ultimately concluding the standard had been met due to "the arbitration agreement's clear language encompassing employment disputes and evidence that Zoller knowingly waived her right to a judicial forum to resolve her statutory claims".  *Id.* at 1203.  Specifically, the Ninth Circuit relied on the fact that Zoller was given full access to multiple documents indicating the mandatory arbitration of employment disputes and had the opportunity to consult with legal counsel before signing.  *Id.* at 1204 (noting "It is clear from the terms of these arbitration provisions that employment discrimination and civil rights claims arising from her employment are encompassed").

Having reviewed the relevant authority, the question becomes, under the *Lai* to *Zoller* line of cases, did Schweyen knowingly enter into an agreement to arbitrate the Title VII claim advanced in this case?  The Court concludes she did not.  As an initial matter, the Court excises from its analysis Schweyen's subjective testimony regarding her understanding of the arbitration clause at issue, (*see* Doc. 22-2 at 4–5).  *Zoller*, 993 F.3d at 1204 ("Zoller's alleged subjective misunderstanding of the documents is not dispositive because our analysis rests on the explicit terms of the agreement"); *Renteria*, 113 F.3d at 1108 (finding "Renteria's subjective knowledge" irrelevant because the analysis "turn[s] instead

19

on the language of the arbitration clauses").  Instead, the Court focuses on the language of the employment agreements at issue.

As enumerated above, both employment agreements outline a dispute resolution process that ultimately culminates in formal arbitration:

12.    DISPUTE RESOLUTION

a.    If any dispute arises under this Agreement, the parties agree to attempt to resolve the dispute in good faith as follows:

1.    First, by informal negotiation.

2.    If informal negotiations fail to resolve the dispute, the parties agree to seek mediation using a mediator acceptable to both parties.

3.    If mediation fails to resolve the dispute within 30 days of initial mediation session, the parties agree to submit to binding arbitration under the provisions of the Montana Uniform Arbitration Act, Title 27, Chapter 5, MCA.

(Docs. 15-1 at 13; 15-2 at 13.)  Here, the only language that could have possibly notified Schweyen she was agreeing to arbitrate a Title VII employment discrimination claim is that extending the dispute resolution language to "any dispute aris[ing] under this Agreement."  (*Id.*)  This language is insufficient to accomplish a knowing waiver of Schweyen's ability to advance her claim in this

20

Court.

*Nelson* makes the standard clear, "[a]ny bargain to waive the right to a judicial forum for civil rights claims . . . in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." 119 F.3d at 762. The language in Schweyen's employment agreements, at most, notified her that she was agreeing to arbitrate contractual disputes regarding her agreement to be the University's head women's basketball coach. Nothing in the agreement explicitly notified her that non-contractual employment disputes, such as a Title VII claim, would have to be arbitrated.

If the *Lai* line of cases requires anything, it requires precision on the part of the employer in occasioning a contractual waiver from their employees as to their ability to advance employment discrimination claims in a judicial forum. Schweyen's employment agreements lacked this requisite precision. In other words, nothing in Schweyen's employment agreements put her "on notice that . . . [s]he was somehow entering into an agreement to waive a specific statutory remedy afforded h[er] by a civil rights statute." *Id.* Because of this, the University's motion must be denied.

Based on the foregoing, the Court need not address the merits of Schweyen's motions for leave to file a surreply or conduct jurisdictional discovery (Doc. 26;

21

28), because both motions are moot given the Court's denial of the University's motion to compel arbitration.

Accordingly, IT IS ORDERED the University's motion to compel arbitration (Doc. 13) and Schweyen's motions for leave to file surreply (Doc. 26) or conduct jurisdictional discovery (Doc. 28) are DENIED.

DATED this 5th day of May, 2022.

Dana L. Christensen, District Judge
United States District Court