Linda M. Correia (*Pro Hac Vice*)
Lauren A. Khouri (*Pro Hac Vice*)
CORREIA & PUTH, PLLC
1400 16th Street, NW, Suite 450
Washington, DC 20036
Phone:  (202) 602-6500
Fax:    (202) 602-6501
Email:  lcorreia@correiaputh.com
        lkhouri@correiaputh.com

J. Devlan Geddes
Katherine B. DeLong
GOETZ, GEDDES & GARDNER, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Phone: (406) 587-0618
Fax:    (406) 587-5144
Email: devlan@goetzlawfirm.com
        kdelong@goetzlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA**

| | |
|---|---|
| SHANNON SCHWEYEN,<br><br>           Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF MONTANA-MISSOULA,<br><br>           Defendant. | Cause No. 9:21-CV-00138-DLC<br><br>**PLAINTIFF SHANNON SCHWEYEN'S REPLY IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE**<br><br>**FILED UNDER SEAL** |

1

## INTRODUCTION

Plaintiff Shannon Schweyen has moved in *limine* to exclude from trial certain evidence that is irrelevant to the issues in this case, has no probative value, and even if it has minor probative value, is unduly prejudicial and confuses the issues being litigated. Thus, it merits exclusion. In Plaintiff's brief, ECF No. 127, Plaintiff pointed out that Kent Haslam did not rely upon this information when he terminated Plaintiff's employment. In many cases, Haslam was not even aware of it until long after any employment decision and only learned of the information during litigation of Plaintiff's claims.

Now, months after discovery has closed, and contrary to his deposition testimony and contemporaneous meeting notes during Plaintiff's employment, Defendant has filed a brand-new, self-serving affidavit from Kent Haslam. The affidavit was signed on September 21, 2023—ten days after Plaintiff filed her motions *in limine*. Haslam categorically claims for the first time that he actually did rely upon the information that Plaintiff seeks to exclude.

Haslam's newly changed story is belied by the volume of prior evidence in this case, including contemporaneous notes and emails, Haslam's deposition testimony, and Haslam's *first* affidavit (filed with Defendant's motion for summary judgment), all of which cast doubt on Haslam's previously undisclosed statements. Defendant rests its hyperbolic opposition to Plaintiff's motions *in limine* on

2

Haslam's unreliable new testimony. Defendant's opposition demonstrates its goal in this case: to inflame the jury by introducing evidence that villainizes Plaintiff to "simply make [Plaintiff] look bad," as Defendant itself stated. *See* ECF No. 135 (hereinafter "Def. Br.") at 3. Defendant's true intention of slinging irrelevant information with little to no probative value to malign Plaintiff's character is improper and will unfairly distract, confuse, and prejudice a jury against Plaintiff.

Haslam's second affidavit is a sham affidavit and does not make the evidence Plaintiff seeks to exclude any more admissible than it was before. The affidavit contradicts Haslam's prior testimony and written records in this case. Defendant offers it now only to bolster its opposition to Plaintiff's motions in *limine*. The testimony in Haslam's second affidavit should be excluded from presentation to a jury, and Plaintiff's motion *in limine* should be granted.

## ARGUMENT

When deposed about his reasons for not renewing Plaintiff's contract, Kent Haslam testified that he changed his mind about renewing Ms. Schweyen's contract because "there was not going to be much of a roster left," and that "the culture" was not "fixed." ECF No. 54-3 at 250:5-14. This was the extent of his testimony on this topic. Then, in an affidavit dated March 20, 2023, served after the close of discovery, Haslam further elaborated: "I made the decision not to renew Schweyen's contract. I did so based on the team's poor performance, the harmful environment for the

3

student athlete's [*sic*] under Schweyen, the intent of many players to leave UM if she returned, and because I felt that I could no longer trust her ability to effectively lead the women's team." ECF No. 54-2 (hereinafter "Haslam First Aff.") at ¶ 13. Now, in yet another brand-new affidavit, designed to manufacture a defense to Plaintiff's motion *in limine*, Haslam changes course. Haslam attests that he "considered all of the information available to [him] at that time" in deciding to end Ms. Schweyen's employment. ECF 137-1 (hereinafter "Haslam Second Aff.") at ¶ 16. He further attests that at least five different topics, all raised in Plaintiff's motion *in limine* but never previously mentioned by Haslam, were known to him and were motivating factors in his termination decision. *See* Haslam Second Aff. The Court should reject Defendant's attempt to create sham issues of fact through Haslam's new affidavit, testimony that is not relevant and runs afoul of Rule 403.

Defendant's use of Haslam's new testimony is analogous to a party that produces a sham affidavit to defeat a summary judgment motion. Courts strike or disregard such affidavits where the new testimony contradicts the affiant's prior testimony. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). A sufficient contradiction exists where the affiant testifies to information he previously testified he could not remember, unless he offers a "reasonable explanation" for the inconsistency. *Id.* at 1080-81. A party may also be found in violation of the Federal Rules where it submits a declaration "that is contradicted by evidence in the record

4

including emails, contracts, and the defendant's deposition testimony." *United States Sec. Holdings v. Andrews*, 2021 U.S. Dist. LEXIS 253321, at *9 (C.D. Cal. Dec. 24, 2021); *see also* Fed. R. Civ. P. Rule 56(h).

▇▇▇▇▇▇▇

In his new affidavit, Haslam now attests he recalls ▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇ "raising the issue of Schweyen ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇." *Id.* at ¶ 8. However, Haslam provides no corroborating details, such as when or where they allegedly raised this issue. *Id.* Nor is ▇▇▇▇▇▇▇ mentioned anywhere in the extensive notes Haslam took during his meetings with these students in 2018, let alone in any other produced document. Nor did Haslam mention ▇▇▇▇▇▇▇ at any point in his deposition.

▇▇▇▇▇▇▇ herself has previously testified in this case that, the only time she met with Haslam, she "let ▇▇▇▇▇ do most of the talking." ECF No. 54-15 at ¶ 25. ▇▇▇▇▇▇▇ wrote a five-page letter to Haslam, after the end of her final season playing for Ms. Schweyen, in which he made dozens of allegations against Ms. Schweyen; his letter makes no mention of ▇▇▇▇▇▇▇. ECF No. 54-18. Furthermore, Defendant offers no citation at all to support its assertion that Plaintiff's receiving data about player ▇▇▇▇▇▇▇ was "uncommon." Def. Br. at 14. The latter claim is contradicted by Plaintiff's testimony that the head coach reviewing ▇▇▇▇▇▇▇ was common and was also Robin Selvig's practice. *See*

ECF No. 89-1, Ex. 7 at pg. 86-87, at 209:22-211:7. Notably, neither of Haslam's two affidavits include any testimony to support Defendant's claim that monitoring ▇▇▇ at the Division I level was uncommon.

Any evidence about ▇▇▇ is irrelevant to Defendant's decision to fire Plaintiff. Even if there is some tangential probative value, it will confuse and inflame the jury and should be excluded.

▇▇▇

Haslam testifies that ▇▇▇ and ▇▇▇ told him in March 2020 "that ▇▇▇." Haslam Second Aff. at ¶ 9. Haslam's detailed notes from these two meetings make no mention of either of these players naming anyone else who would be leaving, let alone any mention of ▇▇▇. ECF No. 89-1 at Ex. 54, pg. 593-94. Haslam's latest, self-serving affidavit contradicts his contemporaneous notes and his previous testimony in this case. *See* ECF No. 54-3 at 250:5-14; Haslam First Aff. at ¶ 13; ECF No. 89-1 at Ex. 54, pg. 593-94.

Haslam also speculates in his new affidavit that ▇▇▇ "might" have been "referencing" ▇▇▇ wanting to leave when she said (as is reflected his notes)

6

that more players would be leaving. Haslam Second Aff. at ¶ 9.[1] Haslam's speculative statement is not personal knowledge and should be excluded at trial.

### *Injuries*

Haslam newly claims that Rachel Ronan "occasionally" expressed "concerns that Schweyen's changes to exercise plans and schedules could be contributing to injuries." *Id.* at ¶ 10. This directly contradicts Rachel Ronan's own deposition testimony, in which she testified that she did not ever tell Kent Haslam she had concerns about players' physical well-being. ECF No. 54-37 at 27:21-24. Haslam himself previously testified that he presently believes Plaintiff "was doing the best she could do" when her two starters were injured. ECF No. 89-1, Ex. 2 at pg. 19-20. In both seasons that her players were injured, he mostly told her to "hang in there." *Id.* at 153:7-12; 157:6-15. Regardless, Haslam has never once asserted that Plaintiff's decisions about strength and conditioning were part of his decision to end her employment. *See* ECF No. 54-3 at 250:5-14; Haslam First Aff. at ¶ 13. Haslam's new affidavit is a transparent effort to create a sham issue of fact and such testimony should be excluded.

---

[1] Defendant's brief cites Haslam's affidavit to assert, without any evidence, that ▇▇▇▇▇▇ statement "included ▇▇▇▇▇▇." Def. Br. at 21.

▆

Haslam's new affidavit asserts: "although our investigation did not substantiate [the allegation that Plaintiff ▆ with students], it also could not rule out that it may have happened." Haslam Second Aff. at ¶ 13. This speculative statement does not reflect Haslam's personal knowledge and is thoroughly contradicted by Defendant's contemporaneous document and Haslam's previous testimony. *See* ECF No. 125-11, Ex. 8 at 288:22-289:19 (testifying that he found no substantiation to this allegation after speaking with the players); ECF No. 89-1, Ex. 2 at pg. 39, at 274:1-7 (testifying he found the allegations unlikely from the outset because they did not align with what he knew of Ms. Schweyen).

▆

Haslam asserts for the first time in his second affidavit that "stories" about ▆ were something he considered in his decision to end Plaintiff's employment. *See* Haslam Second Aff. at ¶ 14; ECF No. 54-3 at 250:5-14; Haslam First Aff. at ¶ 13. There is no evidence anywhere in the record that these claims were something that Haslam was concerned about, and he has never mentioned them before as something he considered in his decision to end Plaintiff's employment. *See id.*; ECF 54-2 at ¶ 13. Defendant's attachment of unauthenticated, undated, unidentified screenshots does not make this evidence any more relevant or probative. It should be excluded.

*Mental Health*

At issue in this case is the information that Kent Haslam actually and contemporaneously relied upon in recommending to end Plaintiff's employment in April 2020. Haslam's second affidavit, signed on September 21, 2023, contradicts his contemporaneous notes from his meetings with students, and his prior testimony in this case. The record in this case prior to September 21, 2023 simply does not reflect that he had concerns about the long-term mental health of the student-athletes at the time that he made his decision. *See* ECF No. 54-3 at 250:5-14; Haslam First Aff. at ¶ 13; *see* ECF No. 89-1 at Ex. 54, pg. 593-94.

Testimony about players' ongoing mental health or other testimony that goes beyond the scope of what they actually reported prior to April 1, 2020 should be excluded because it will confuse and prejudice the jury against Plaintiff. The jury in this case must focus on Haslam's state of mind at the time he terminated her in 2020 and his reasons for the non-renewal, not newly-fashioned, inflammatory testimony reflected in Haslam's second affidavit. The testimony should be excluded.

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that the Court grant her motions *in limine*.

Date: October 10, 2023          Respectfully submitted,

_/s/ L. Khouri_
J. Devlan Geddes
Katherine B. DeLong
GOETZ, GEDDES & GARDNER, P.C.

Linda M. Correia
Lauren A. Khouri
CORREIA & PUTH, PLLC

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2023, I am filing the foregoing through the Court's NextGen Pacer System (also known as the CM/ECF system), which will serve a copy on all counsel of record.

_/s/ L. Khouri_
Lauren A. Khouri

## **CERTIFICATE OF COMPLIANCE**

This filing complies with D. Mont. Local Rules because, excluding exempted parts, this filing contains 1783 words and has been prepared in a proportionally spaced typeface using Microsoft Word in 14pt Times New Roman font.

_/s/ L. Khouri_
Lauren A. Khouri